IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| ALOHA PETROLEUM, LTD., | CIVIL NO. 13-0296 DKW-RLP |
| Plaintiff, | ORDER GRANTING ALOHA PETROLEUM, LTD.'S MOTION FOR SUMMARY JUDGMENT ON COUNT II, AND DENYING DEFENDANT NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA'S CROSS-MOTION TO DISMISS, STAY, OR TRANSFER THIS ACTION TO THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK |
| vs. | |
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, | |
| Defendant. | |

**ORDER GRANTING ALOHA PETROLEUM, LTD.'S
MOTION FOR SUMMARY JUDGMENT ON COUNT II, AND
DENYING DEFENDANT NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA'S CROSS-MOTION TO DISMISS,
STAY, OR TRANSFER THIS ACTION TO THE UNITED STATES
<u>DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK</u>**

**<u>INTRODUCTION</u>**

Aloha Petroleum and National Union, Aloha's former insurer, dispute

their obligation to arbitrate a disagreement over reimbursement of defense costs

allegedly due to National Union.   Because the parties' dispute arises out of National Union's policy, which does not contain an arbitration provision, rather than out of a separate payment agreement, which does, the Court grants Aloha's motion for summary judgment and denies National Union's cross-motion to dismiss, stay, or transfer this action to New York.

## BACKGROUND

## I.    Agreements Between Aloha and National Union

Plaintiff Aloha Petroleum, Ltd. ("Aloha") and Defendant National Union Fire Insurance Company of Pittsburgh, PA ("National Union") entered into two agreements whose terms are currently in dispute: (1) a commercial general liability policy issued by National Union to Aloha, Policy No. GL 280-30-51 ("GL Policy"), Aloha Ex. 1; and (2) a separately executed Payment Agreement For Insurance and Risk Management Services ("Payment Agreement"), Aloha Ex. 5.

### A.    GL Policy

Under the Coverage Form of the GL Policy, National Union agreed to

> pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies.   We will have the right and duty to defend the insured against any "suit" seeking those damages.

2

Aloha Ex. 1 (GL Policy) at 5.   There are several relevant endorsements to the GL Policy, including the Large Risk Rating Plan Endorsement ("LRRP Endorsement") and the Deductible Coverage Endorsement ("Deductible Endorsement").   The LRRP and Deductible Endorsements expressly modify the GL Policy.   The LRRP Endorsement provides for "reimbursements of certain losses and Allocated Loss Adjustment Expenses we pay."   The Allocated Loss Adjustment Expenses ("ALAE") include:

> [a]ll fees for service of process and court costs and court expenses; pre- and post-judgment interest; attorneys' fees; cost of undercover operative and detective services; costs of employing experts; costs for legal transcripts, copies of any public records, and costs of depositions and court-reported or recorded statements; cost and expenses of subrogation; and any similar fee, cost or expense reasonably chargeable to the investigation, negotiation, settlement or defense of a loss or a claim or suit against you, or to the protection and perfection of your or our subrogation rights.

Aloha Ex. 2 (LRRP Endorsement) at A0039.   The LRRP Endorsement indicates that "ALAE Option C" in excess of the applicable Retained Amount is applicable to the GL Policy.   ALAE Option C, in turn, is described in the LRRP Endorsement as follows:

      c.    <u>Option C</u>: Subject Loss includes all or part of ALAE calculated according to the following formula:

        i.    if we incur NO obligation under the policies to pay damages, benefits or indemnity resulting from a claim, *Subject Loss* under that claim will include all *ALAE* up to the applicable *Retained Amount* and a percentage of all *ALAE* in excess thereof. That percentage is shown in Section 3 of Part II under "Option C Excess %"; or

        ii.    if we DO incur an obligation to pay damages, benefits or indemnity under the policies because of a claim, *Subject Loss* under that claim will include all *ALAE* incurred under that claim, multiplied by the amount of our obligation to pay damages or benefits up to the applicable *Retained Amount*, divided by the total amount of our obligation to pay damages or benefits.

*Id.* at A0039-40.   Part II, Section 3 states that the ALAE Option C "Excess %" is "100%."   *Id.* at A00042.

      The Deductible Endorsement requires Aloha to reimburse National Union for part of the ALAE, as follows:

      That part will be calculated by dividing the smaller of the deductible or the damages, benefits or Medical Payments we pay by the damages, benefits or Medical payments we pay.   If we pay no damages, benefits or Medical Payments, you must reimburse us for all "Allocated Loss Adjustment Expense: up to the applicable Deductible amount and 100% of all remaining "Allocated Loss Adjustment Expense".

4

Aloha Ex. 3 (Deductible Endorsement) at 1.   It also provides that, "[i]f an Annual

Aggregate Deductible Amount (the "Aggregate") is shown in the Schedule, that

amount is the most you must reimburse us for all damages, benefits, and Medical

Payments and 'Allocated Loss Adjustment Expenses' that we pay under this policy

and all other policies listed in Part I of the Schedule."   *Id.* at 2.   The GL Policy is

listed in the Schedule of polices to which the deductible applies as being subject to

the Aggregate.   *Id.* at 3.   The GL Policy is identified as having a total Aggregate of

$100,000.   *Id.* at 4-5.   Neither the GL Policy nor the Endorsements contain an

arbitration provision.

       **B.**    <u>**Payment Agreement**</u>

      Aloha and National Union entered into a Payment Plan, executed on

May 9, 2006, which sets forth terms for payment due dates, deposits, installments

and additional payments, billing methods and collateral for Aloha's workers

compensation and employers liability insurance (WC 1591309), the GL Policy and

automobile coverage (CA 4806971).   Aloha Ex. 5 (Payment Agreement).   The

Payment Agreement includes the following dispute resolution provisions:

**What if we disagree about payment due?**

If You disagree with us about any amount of Your Payment Obligation that we have asked you to pay, within the time allowed for payment You must:

• give us written particulars about the items with which You disagree; and
• pay those items with which you do not disagree

We will review the disputed items promptly and provide You with further explanations, details, or corrections. You must pay us the correct amounts for the disputed items within 10 days of agreement between You and us about their correct amounts. Any disputed items not resolved within 60 days after our response to Your written particulars must be submitted to arbitration as set forth below. With our written consent, which shall not be unreasonably withheld, You may have reasonable additional time to evaluate our response to Your written particulars.

So long as You are not otherwise in default under this Agreement, we will not exercise our rights set forth under "What May We Do in Case of Default?", pending the outcome of the arbitration on the disputed amount of Your Payment Obligation.

**What about disputes other than disputes about payment due?**

Any other unresolved dispute arising out of this Agreement must be submitted to arbitration. You must notify us in writing as soon as You have submitted a dispute to arbitration. We must notify You in writing as soon as we have submitted a dispute to arbitration.

**Arbitration Procedures**

**How arbitrators must be chosen:** You must choose one arbitrator and we must choose another. They will choose the third. If You or we refuse or neglect to appoint an arbitrator within 30 days after written notice from the other party requesting it to do so, or if the two arbitrators fail to agree on a third arbitrator within 30 days of their appointment, either party may make an application to a Justice of the Supreme Court of the State of New York, County of New York and the Court will appoint the additional arbitrator or arbitrators.

**Qualifications of arbitrators:** Unless You and we agree otherwise, all arbitrators must be executive officers or former executive officers of property or casualty insurance or reinsurance companies or insurance brokerage companies, or risk management officials in an industry similar to Yours, domiciled in the United States of America not under the control of either party to this Agreement.

*Id.* at A0008. The Payment Agreement gives the arbitrators "exclusive jurisdiction over the entire matter in dispute, including any question as to its arbitrability." A0008. A venue provision also provides that "any action or proceeding concerning arbitrability, including motions to compel or to stay arbitration, may be brought only in a court of competent jurisdiction in the City, County, and State of New York." *Id.* at A0023.

## C.   <u>Policy History</u>

National Union issued the GL Policy to Aloha covering the policy period from April 1, 2008 to April 1, 2009. National Union's underwriter sent

Aloha's insurance broker a renewal coverage proposal on March 13, 2008. On

April 1, 2008, the underwriter sent a binder of coverage for the Aloha GL Policy,

commercial automobile and worker's compensation renewal insurance to Aloha's

broker. Both the proposal and the binder indicated that the deductible amount

applicable to general liability claims would be $100,000. Jacobs Decl. ¶¶ 2-4, Ex.

D (Proposal), Ex. F (Binder). On May 20, 2008, a renewal GL Policy was issued to

Aloha and mailed to its insurance broker. According to National Union, the 2008

GL Policy erroneously included the Deductible Endorsement – Form A, with an

Annual Aggregate Deductible of $100,000 "issued through a clerical error." Jacobs

Decl.¶¶ 5-6. National Union issued the same Deductible Endorsement to Aloha

with Policy No. GL093-59-59, effective April 1, 2009. Aloha Ex. 4 (2009

Deductible Endorsement). On February 24, 2011, National Union mailed a

"corrected" form of deductible endorsement to Aloha's insurance broker. Jacobs

Decl. ¶ 6, Ex. H (Corrected Endorsement).

## II.      Underlying Dispute and Arbitration Demand

On October 6, 2008, BlueEarth Biofuels, LLC sued Aloha, and others,

for breach of contract and disparagement in *BlueEarth Biofuels, LLC v. HECO, Inc.,*

No. 09-CV-00181 ("BlueEarth Action"). Aloha tendered the action to National

Union, and National Union defended Aloha subject to a reservation of rights.

Aloha Ex. 6 (1/14/2010 Reservation of Rights Letter).   The district court dismissed BlueEarth's claims against all defendants and entered judgment in favor of Aloha on August 18, 2011.   The Ninth Circuit affirmed on June 21, 2013.   According to National Union, it expended $1,343,669 in defense costs (with no indemnity costs) for the BlueEarth Action.

On May 25, 2011, National Union wrote to Aloha that the balance on its deductible program through March 2011 was $362,307.81, representing invoicing for the months of May 2010 through March 2011.   National Union demanded full payment for the balance by June 8, 2011.   Aloha Ex. 8 (5/25/2011 Letter).   Aloha responded in a June 22, 2011 letter, stating that its reimbursement obligation is limited to $100,000 under the Deductible Endorsement, rejecting National Union's demand for payment.   Aloha Ex. 9 (6/22/2011 Letter).

National Union demanded arbitration against Aloha for amounts owed "as premiums, adjustments, expenses, fees, or reimbursements of any kind, including without limitation, any indemnification for losses or loss expenses, and any damages, interest of security that may be due, pursuant to the Program."   Aloha Ex. 10 (4/11/2013 Demand for Arbitration) at 1.   The April 11, 2013 Demand sought (1) $1,343,669 due as premium arising from loss expenses for the BlueEarth Action, and (2) $287,901 due as security, for a total due of $1,631,570.   National

Union demanded arbitration pursuant to the Payment Agreement, and requested that the proceeding be held in New York.  *Id.* at 2, 10.   The April 11, 2013 Demand disputed whether the BlueEarth Action is covered by the GL Policy, and sought to establish that the LRRP Endorsement, ALAE Option C is not limited by the Deductible Endorsement.  *Id.* at 8-9.

In response, Aloha filed the instant declaratory judgment action against National Union on June 13, 2013.   National Union served an Amended Demand for Arbitration, dated February 14, 2014 (Aloha Ex. 11 (2/14/2014 Amended Demand) at 2), and concurrently filed a Petition to Compel Arbitration in the United States District Court, Southern District of New York, Civ. No. 14-1034.   Aloha Ex. 12.  The Petition to Compel Arbitration seeks an "order determining that pursuant to the Program Agreements, [Aloha] is required to submit the dispute asserted in the Aloha Complaint to arbitration."  *Id.* at 9.   Aloha thereafter filed a First Amended Complaint, setting forth the following causes of action: (1) declaratory judgment regarding the parties' substantive rights and obligations under the GL policy (Count I); (2) declaratory judgment regarding arbitrability (Count II); (3) declaratory judgment that National Union's arbitration demand is unenforceable (Count III); (4) injunctive relief (Count IV); (5) breach of the duty of good faith and fair dealing with respect to the retroactive annulment of the Deductible Endorsement (Count V);

(6) bad faith claim for refusal to agree to Aloha's appointed arbitrator (Count VI); and (7) bad faith claim based on National Union's demand for arbitration (Count VII).

## III. **Motions**

Aloha moves for an order preliminarily enjoining National Union and its agents from proceeding with the arbitration against Aloha until, if at all, the Court decides the claims asserted in Counts I and III of the First Amended Complaint. Alternatively, Aloha moves for summary judgment on Count II. Count II requests a declaration that Aloha is not required to arbitrate the claims asserted by National Union or, alternatively, that Aloha is not required to arbitrate those claims until this Court rules on the declaratory relief sought in Counts I and III. First Amended Complaint ¶¶ 99-116.

National Union filed a Cross-Motion to Dismiss, Stay, or Transfer this Action to the United States District Court, Southern District of New York. It argues that the Court should transfer this case pursuant to 28 U.S.C. § 1404 based largely on the Payment Agreement's forum selection clause. Alternatively, it argues that the Court should stay or dismiss this action and compel the parties to arbitrate.

## STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(a), a party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If that burden is met, the nonmoving party must then come forward and establish the specific material facts in dispute to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 585. Also, "[t]he mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient[]" to defeat summary judgment. *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Likewise, the nonmoving party "cannot defeat summary judgment with allegations in the complaint, or with unsupported conjecture or conclusory statements." *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003). The Court must draw all reasonable inferences in favor of the nonmoving party. *Matsushita,* 475 U.S. at 587.

## DISCUSSION

## I.    Aloha Motion for Summary Judgment

The Court first addresses Aloha's motion for summary judgment on Count II and does not reach its alternative request for a preliminary injunction.

### A.    Legal Principles of Contract Interpretation

Under Hawaiʻi law, general rules of contract construction apply to the interpretation of insurance contracts.    *Dawes v. First Ins. Co. of Haw.*, 77 Hawaiʻi 117, 121, 883 P.2d 38, 42 (1994).   As set forth by the Hawaiʻi Supreme Court:

> [I]nsurers have the same rights as individuals to limit their liability and to impose whatever conditions they please on their obligation, provided they are not in contravention of statutory inhibitions or public policy.   As such, insurance policies are subject to the general rules of contract construction; the terms of the policy should be interpreted according to their plain, ordinary, and accepted sense in common speech unless it appears from the policy that a different meaning is intended.   Moreover, every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy.

> Nevertheless, adherence to the plain language and literal meaning of insurance contract provisions is not without limitation.   We have acknowledged that because insurance policies are contracts of adhesion and are premised on standard forms prepared by the insurer's attorneys, we have long subscribed to the principle that they must be construed liberally in favor of the insured and any ambiguities must be resolved against the insurer.   Put another way, the rule is that policies are to be construed in accord with the reasonable expectations of a layperson.

*Guajardo v. AIG Haw. Ins. Co., Inc*., 118 Hawai'i 196, 201-02, 187 P.3d 580,

585-86 (2008) (alteration in *Guajardo*) (quoting *Dairy Rd. Partners v. Island Ins.*

*Co*., 92 Hawai'i 398, 411-12, 992 P.2d 93, 106-07 (2000)).   The Hawai'i Supreme

Court has also stated: "[t]he objectively reasonable expectations of [policyholders]

and intended beneficiaries regarding the terms of insurance contracts will be

honored even though painstaking study of the policy provisions would have negated

those expectations.   These 'reasonable expectations' are derived from the insurance

policy itself. . . ."   *Del Monte Fresh Produce (Haw.), Inc. v. Fireman's Fund Ins.*

*Co.*, 117 Hawai'i 357, 368, 183 P.3d 734, 745 (2007) (citations and some quotation

marks omitted) (some alterations in original).

      Under the principles of general contract interpretation, "[a] contract is

ambiguous when the terms of the contract are reasonably susceptible to more than

one meaning."   *Airgo, Inc. v. Horizon Cargo Transp. Inc*., 66 Haw. 590, 594, 670

P.2d 1277, 1280 (1983).

> It is well settled that courts should not draw inferences from a
> contract regarding the parties' intent when the contract is definite
> and unambiguous.   In fact, contractual terms should be
> interpreted according to their plain, ordinary meaning and
> accepted use in common speech.   The court should look no
> further than the four corners of the document to determine
> whether an ambiguity exists.   Consequently, the parties'

14

> disagreement as to the meaning of a contract or its terms does not render clear language ambiguous.

*State Farm Fire & Cas. Co. v. Pac. Rent-All, Inc.*, 90 Hawai'i 315, 324, 978 P.2d 753, 762 (1999) (citations omitted). *See also Wagner v. Stratton Oakmont, Inc.*, 83 F.3d 1046, 1049 (9th Cir. 1996) (In construing the terms of an agreement, the court "appl[ies] general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration."). With these principles in mind, the Court turns to whether the arbitration provision of the Payment Agreement requires the parties to arbitrate the present dispute.

### B.    Aloha is Entitled to Summary Judgment on Count II

The parties' dispute centers on National Union's provision of a defense of the BlueEarth Action on behalf of Aloha, subject to a reservation of rights, whether the Deductible Endorsement obligates Aloha to reimburse National Union for part of the ALAE, as defined by the LRRP Endorsement, and if so, whether Aloha's reimbursement obligation is limited to $100,000 by the GL Policy and the Deductible Endorsement that National Union claims was erroneously issued. Because these issues arise out of the GL Policy, and its Endorsements, none of which contain an arbitration provision, and not, as National Union insists, out of the

Payment Agreement, the Court grants Aloha's motion for summary judgment on Count II.

The "declarations, if applicable, together with the common policy conditions, coverage forms, and endorsements if any issued" form the GL Policy. Ex. 1 (GL Policy) at 2.  Neither the GL Policy, the LRRP Endorsement nor the Deductible Endorsement incorporate or integrate the Payment Agreement.

By contrast, the Payment Agreement does contain and arbitration provision.  By its unambiguous terms, the Payment Agreement does not extend its arbitration provision to the GL Policy, the Coverage Form, the LRRP Endorsement or the Deductible Endorsement:  the arbitrators "must interpret *this Agreement* as an honorable engagement and not merely a legal obligation. . . .  They must make their award to effect the general purpose of *this Agreement* in a reasonable manner." Ex. 5 (Payment Agreement) at A0009 (emphasis added).  In plain terms, the arbitrators must apply and interpret the Payment Agreement, not the GL Policy.

Indeed, the Payment Agreement's arbitration provision applies only to (1) "[a]ny disputed items [i.e., "any amount of Your Payment Obligation"] not resolved within 60 days after [National Union's] response to [Aloha's] written particulars," and (2) "[a]ny other unresolved dispute arising out of [the Payment]

Agreement."[1]  Ex. 5 at A0008.  *See also* National Union Opp. at 6 ("The Payment Agreement governs the manner in which Aloha remits Payment of premiums, expenses, and fees to National Union, as well as the nature and amount of collateral Aloha must deliver to cover its obligations under the Policy.").   Neither of these two clauses govern the claims for coverage and policy construction set forth in Aloha's Count I. In Count I, Aloha requests a declaratory judgment that Aloha does not have an obligation to pay defense costs or ALAE in connection with the BlueEarth Action because:

   a)     The National Union GL Policy obligated National Union to defend and indemnify Aloha for the claims asserted in the BlueEarth Action (i.e. the BlueEarth Action is covered by the National Union GL Policy);

   b)     Option C of the LRRP Endorsement relied upon by National Union as the basis for Aloha's purported obligation to pay ALAE applies only if National Union incurs "NO obligation under the policies to pay damages, benefits or indemnity resulting from a claim."   National Union's duty to defend is a "benefit under the National Union GL Policy", and therefore this provision does not apply;

   c)     The Deductible Endorsement is valid and enforceable and by its terms controls and determines any right of recovery for defense costs related to the BlueEarth Action,

---

[1] With respect to the second clause, where arbitration is required for disputes "arising out of" or "arising under" an agreement, arbitration is limited to disputes "relating to the interpretation and performance of the contract itself."   *Cape Flattery v. Titan Mar.*, 647 F.3d 914, 922 (9th Cir. 2011).

including ALAE, notwithstanding any other provision in the
LRRP Endorsement or Payment Agreement;

       d)     National Union's unilateral attempt to amend the
National Union GL Policy by cancelling the Deductible
Endorsement after the policy period because its issuance was
"erroneous" and a "clerical mistake" is invalid, unenforceable,
and contrary to law;

       e)     The National Union [Reservation of Rights
("ROR")] Letter dated January 14, 2010 by which National
Union accepted the defense of the BlueEarth Action does not
invoke National Union's alleged right to recover ALAE from
Aloha, and reserves no rights with respect thereto.

First Amended Complaint ¶ 97.   The Payment Agreement is extraneous to the
resolution of these disputes regarding coverage, Option C of the LRRP
Endorsement, the Deductible Endorsement, and the reservation of rights.   National
Union's characterization of this action as "a simple payment dispute, in which
National Union is seeking the monies it is owed under the Payment Agreement," is
without merit.   National Union Opp. at 25.   Interpreting the GL Policy and
Endorsements is a prerequisite to calculating the "amount due" to National Union.
Moreover, none of the disputes in Count I challenge National Union's mathematical
calculation of the $1,343,669 in defense costs or otherwise relate to the
interpretation or performance of the Payment Agreement.   A dispute over the terms
of the GL Policy does not become a "simple payment dispute" merely because the

outcome effects reimbursement. That is, voiding or enforcing the terms of the GL Policy is not a mere "payment dispute," or disagreement regarding "amounts" "arising out" of the Payment Agreement.[2]

The Payment Agreement does not determine the scope of Aloha's obligations to reimburse National Union--the GL Policy does. Other courts considering the same language in the Payment Agreement have reached the same conclusion in similar circumstances. In *Alticor, Inc. v. National Union Fire Insurance Co. of Pittsburgh, Pa*., 411 F.3d 669 (6th Cir. 2005), the Sixth Circuit held that the parties' dispute over whether Alticor was required to pay a deductible for the defense provided by National Union was not arbitrable, because the dispute involved issues arising under the insurance policy and not the separate payment agreement. The Sixth Circuit explained that, "[i]t is the insurance policy, not the Premium Payment Agreement, that defines the parties' substantive rights and duties under the policy. It is the policy that creates and defines Alticor's liability for the deductible of a specific amount 'per occurrence.'" 411 F.3d at 671. The Court notes the following discussion of the limited scope of the payment agreement:

---

[2]National Union's own Amended Demand for Arbitration alleges the right to recover reimbursement under the GL Policy "pursuant to the 2008 LRRP Option C" and not the Payment Agreement. *See* Ex. 11 at 5.

Alticor's requirement under the Premium Payment Agreement to make payments to National Union does not convert the determination of the amount of such reimbursement-an issue arising under the insurance policy-into a dispute relating to or arising under the Premium Payment Agreement. The provision on which National Union relies specifies the procedure that Alticor is to follow in reimbursing National Union, but does not determine the scope of Alticor's reimbursement obligations. The insurance policy determines that issue.

411 F.3d at 671-72.

This Court agrees with *Alticor'*s observation that "[i]f National Union had intended to subject [the] dispute to the arbitration provision, it could easily, clearly and unequivocally have done so, either by including an arbitration provision in the insurance policy itself, or by adding to the above arbitration provision, after the words 'arising out of or relating to this Agreement,' words such as 'or involving the meaning or application of any provision of the insurance policy.'" *Id.* at 672. The same is true here. As discussed above, the plain language of the Payment Agreement limits arbitration to disagreements over "amounts" of payments and disputes that "arise out of" the Payment Agreement. Aloha's claims for declaratory relief are neither disagreements over "amounts" of payments nor disputes that "arise out of" the Payment Agreement.

Similarly, in *UMG Recordings, Inc. et al. v. Am. Home Assurance Co*., No. CV 07-3257 GAF (AGRx) (C.D. Cal. Nov. 3, 2008), the district court concluded

that insurance policy disputes, such as disputes over ALAE reimbursement obligations, do not "arise out of" the payment agreement. UMG Order at 6. It noted that, although "the Payment Agreements are directly linked to UMG's reimbursement obligations, the Payment Agreements largely concern the mode and manner of carrying out UMG's payment obligations under the Policies and the consequences for failing to satisfy those obligations." Accordingly, the district court found that the "mandatory arbitration provision therefore does not extend to disputes, such as the one in the present case, concerning the validity or applicability of ALAE reimbursement obligations." *Id.* On appeal of the order denying the insurer's motion to stay proceedings pending arbitration, the Ninth Circuit recognized that, "the underlying dispute does not arise out of the payment agreements and therefore is not subject to the mandatory arbitration provisions. American Home concedes that the arbitration provisions do not extend to disputes over the policies, including the claims UMG raises in its complaint." *UMG Recordings, Inc. v. Am. Home Assur. Co*., 378 Fed. Appx. 766, 767 (9th Cir. 2010). This Court agrees with the reasoning in *Alticor* and *UMG Recordings* and concludes that the Payment Agreement's arbitration clause does not apply to the present dispute.

National Union's Amended Demand For Arbitration asserts that Aloha "must pay as a premium pursuant to the 2008 LRRP Option C, all defense cost incurred by National Union."   Ex. 11 at 1 (Claim Number One).   The parties did not agree to arbitrate such disputes over the GL Policy and its Endorsements.   Even if they did, claims are arbitrable only where (1) "there is a valid agreement to arbitrate" and (2) "the agreement encompasses the dispute at issue."   *Lowden v. T-Mobile USA, Inc.*, 512 F.3d 1213, 1217 (9th Cir. 2008) (citation omitted); *see also Hawaii State Teachers Ass'n v. Univ. Laboratory School*, 132 Hawai'i 426, 430, 322 P.3d 966, 970 (2014) ("When presented with a motion to compel arbitration, the court is limited to answering two questions: 1) whether an arbitration agreement exists between the parties; and 2) if so whether the subject matter of the dispute is arbitrable under such agreement.") (citation omitted).   With respect to the second question, the Court determines whether a claim is arbitrable, unless there is "clear and unmistakable evidence" that the parties agreed to arbitrate arbitrability.   *Cape Flattery Ltd. v. Titan Maritime, LLC*, 647 F.3d 914, 920 (9th Cir. 2011) (citation omitted).   There is no such clear and unmistakable evidence" shown here.   *Cf.* Ex. 5 A00008, A00023.

The Court therefore concludes that the claims asserted here are not subject to arbitration, and Aloha's motion for summary judgment on Count II is GRANTED.[3]

## II.   National Union Motion to Dismiss, Stay, or Transfer Is Denied

In its Cross-Motion, National Union requests an order (1) dismissing the present action; (2) staying the present action; or (3) transferring the present action to the United States District Court for the Southern District of New York. National Union's Cross-Motion is DENIED.

To the extent National Union seeks a transfer pursuant to 28 U.S.C. § 1404 based on the venue or forum selection clause contained in the Payment Agreement, the request is without merit.   The Payment Agreement provides that "any action or proceeding concerning arbitrability, including motions to compel or to stay arbitration, may be brought only in a court of competent jurisdiction in the City, County, and State of New York."   Ex. 5 at A0023.   As discussed above with respect to arbitrability, the Payment Agreement does not apply to the present action. Nor does National Union address the traditional factors to be weighed under Section

---

[3]Because the Court GRANTS Aloha's motion for summary judgment on the foregoing grounds, it need not and does not reach Aloha's alternative arguments relating to whether Haw. Rev. Stat. Section 431:10-221 and Chapter 658A void the arbitration or venue clauses present in the Payment Agreement.

1404(a) to determine whether transfer is appropriate. *See Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000) (Discussing factors including: (1) the plaintiff's choice of forum; (2) the respective parties' contacts with the forum, (3) the contacts relating to the plaintiff's cause of action in the chosen forum; (4) the differences in the costs of litigation in the two forums; (5) the availability of compulsory process to compel attendance of unwilling non-party witnesses; and (6) the ease of access to sources of proof.). National Union, the moving party, has therefore failed to carry its burden of showing that an alternative forum is more appropriate for this action. *Jones*, 211 F.3d at 499.

To the extent National Union asks the Court to compel arbitration and dismiss Aloha's claims, the request is also denied. There is no basis for the Court to compel arbitration. Indeed, the Court has already concluded that the claims in Count I are not subject to the Payment Agreement's arbitration provisions, and National Union provides no justification for compelling arbitration of the unrelated Counts V through VII in Aloha's First Amended Complaint. Accordingly, there is no basis to dismiss or stay the pending action, and National Union's Cross-Motion is DENIED.

24

## **CONCLUSION**

On the basis of the foregoing, the Court GRANTS Aloha Petroleum, Ltd.'s Motion for Summary Judgment on Count II, and DENIES Defendant National Union Fire Insurance Company of Pittsburgh, PA's Cross-Motion to Dismiss, Stay, or Transfer this Action to the United States District Court for the Southern District of New York.

IT IS SO ORDERED.

DATED: June 6, 2014 at Honolulu, Hawai'i.

Derrick K. Watson
United States District Judge

Aloha Petroleum, Ltd., v. National Union Fire Insurance Company of Pittsburgh, PA; Civ. No. 13-0296 DKW-RLP; ORDER GRANTING ALOHA PETROLEUM, LTD.'S MOTION FOR SUMMARY JUDGMENT ON COUNT II, AND DENYING DEFENDANT NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA'S CROSS-MOTION TO DISMISS, STAY, OR TRANSFER THIS ACTION TO THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK