IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| ALOHA PETROLEUM, LTD.,<br><br>    Plaintiff,<br><br>  vs.<br><br>NATIONAL UNION FIRE<br>INSURANCE COMPANY OF<br>PITTSBURGH, PA,<br><br>    Defendant. | CIVIL NO. 13-0296 DKW-RLP<br><br>ORDER GRANTING IN PART AND<br>DENYING IN PART DEFENDANT<br>NATIONAL UNION FIRE<br>INSURANCE COMPANY OF<br>PITTSBURGH, PA'S MOTION TO<br>DISMISS COUNTS V-VII OF THE<br>FIRST AMENDED COMPLAINT |

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA'S MOTION TO DISMISS COUNTS V-VII OF THE FIRST AMENDED COMPLAINT

## INTRODUCTION

National Union's defense of Aloha in *BlueEarth Biofuels, LLC v. HECO, Inc.* has spawned several coverage disputes between the parties. These disputes include Aloha's allegation that National Union acted in bad faith when it: i) retroactively issued a "corrected" endorsement that materially altered the terms of the policy, ii) demanded arbitration of their disputes, despite the absence of an arbitration clause in the policy, and iii) rejected Aloha's proposed arbitrator, named

1

in the event arbitration was found to be required. Because the issue regarding the selection of the arbitrator is moot, and National Union's arbitration demand was not unreasonable as a matter of law, National Union's motion to dismiss is GRANTED with respect to Counts VI and VII. The motion is DENIED as to Count V because Hawaiʻi law permits a bad faith claim based on the "corrected" endorsement allegations asserted by Aloha.

## BACKGROUND

Aloha and National Union dispute their obligations under (1) a commercial general liability policy issued by National Union to Aloha, Policy No. GL 280-30-51 ("GL Policy"); and (2) a separately executed Payment Agreement For Insurance and Risk Management Services ("Payment Agreement"). The Court previously ruled that the Payment Agreement, together with the arbitration provisions contained therein, do not govern the instant lawsuit. 6/6/14 Order (Dkt. No. 65). The instant motion seeks dismissal of three Counts, each alleging the tort of bad faith based on National Union's conduct after Aloha tendered *BlueEarth Biofuels, LLC v. HECO, Inc.,* No. 09-CV-00181 ("*BlueEarth*") to National Union.

National Union defended Aloha in the *BlueEarth* action, subject to a reservation of rights. First Amended Complaint ¶¶ 60-61. The district court dismissed BlueEarth's claims against all defendants and entered judgment in favor

of Aloha on August 18, 2011.   The Ninth Circuit affirmed on June 21, 2013.   First

Amended Complaint ¶ 67.   According to National Union, it expended over $1.3

million in defense costs (with no indemnity costs) for the *BlueEarth* action.   First

Amended Complaint ¶ 84.

I.   **Agreements Between Aloha and National Union**

The GL Policy included a Large Risk Rating Plan Endorsement

("LRRP Endorsement") that confers responsibility on Aloha for Allocated Loss

Adjustment Expenses ("ALAE").   ALAE is defined as:

> All fees for service of process and court costs and court
> expenses; pre- and post-judgment interest; attorneys' fees; cost
> of undercover operative and detective services; costs of
> employing experts; costs for legal transcripts, copies of any
> public records, and costs of depositions and court-reported or
> recorded statements; cost and expenses of subrogation; and any
> similar fee, cost or expense reasonably chargeable to the
> investigation, negotiation, settlement or defense of a loss or a
> claim or suit against you [Aloha], or to the protection and
> perfection of your or our subrogation rights.

First Amended Complaint ¶ 25 (alteration in original).   The LRRP Endorsement

indicates that "ALAE Option C" applies to the GL Policy, which in turn provides:

> Option C: Subject Loss includes all or part of ALAE calculated
> according to the following formula:
>
> i.      if we incur NO obligation under the policies to pay
> damages, benefits or indemnity resulting from a claim, Subject
> Loss under that claim will include all ALAE up to the applicable

3

> Retained Amount and a percentage of all ALAE in excess
> thereof. That percentage is shown in Section 3 Part II under
> "Option C Excess" % . . . .

First Amended Complaint ¶ 26. The LRRP Endorsement states that the "Excess

%" is "100%." First Amended Complaint ¶ 27.

The GL Policy also included a Deductible Endorsement that requires

Aloha to reimburse National Union for part of the ALAE, as follows:

> If an Annual Aggregate Deductible Amount (the "Aggregate") is
> shown in the Schedule [of policies to which the Aggregate
> deductible applies], that amount is the most you must reimburse
> us for all damages, benefits, and . . . 'Allocated Loss Adjustment
> Expenses' that we pay under this policy and all other policies
> listed in Part I of the Schedule.

First Amended Complaint ¶ 30. The GL Policy is listed in the Schedule of polices

to which the deductible applies as being subject to the Aggregate, and is identified as

having a total aggregate of $100,000. First Amended Complaint ¶¶ 31-32.

According to Aloha, a maximum annual aggregate deductible of $100,000 applies

on a combined basis to the liability coverage owed to it under the policy, including

any ALAE claimed by National Union. First Amended Complaint ¶ 33.

Aloha and National Union also entered into a Payment Agreement,

executed on May 9, 2006. First Amended Complaint ¶ 36. The Payment

Agreement includes a dispute resolution provision that requires arbitration of any

dispute arising out of the Payment Agreement.   First Amended Complaint ¶ 45.   It also includes a New York forum selection clause and the following provision regarding "Qualifications of the arbitrators":

> Unless *You* and we agree otherwise, all arbitrators must be executive officers or former executive officers of property or casualty insurance or reinsurance companies or insurance brokerage companies, or risk management officials in an industry similar to Yours, domiciled in the United States of America not under the control of either party to this Agreement.

First Amended Complaint ¶ 46.

National Union issued the GL Policy to Aloha with the LLRP Endorsement and Deductible Endorsement for the policy period from April 1, 2008 to April 1, 2009.   First Amended Complaint ¶ 15.   National Union issued the same Deductible Endorsement to Aloha with Policy No. GL093-59-59, effective April 1, 2009.   First Amended Complaint ¶ 34.   In 2009, Aloha was sued in the *BlueEarth* action, with National Union defending under a reservation of rights.   On February 24, 2011, National Union "unilaterally and without Aloha's knowledge or consent," issued a "corrected" form of Deductible Endorsement to Aloha ("Corrected Deductible Endorsement"), which purported to delete the annual aggregate deductible amount of $100,000 for the GL Policy.   First Amended Complaint ¶ 35.

## II. <u>Arbitration Demand and Instant Lawsuit</u>

On May 25, 2011, National Union wrote to Aloha that the balance on its deductible program through March 2011 was $362,307.81, representing invoicing for the months of May 2010 through March 2011.  First Amended Complaint ¶ 68.  Aloha responded in a June 22, 2011 letter, stating that its reimbursement obligation is limited to $100,000 under the Deductible Endorsement, rejecting National Union's demand for payment.  First Amended Complaint ¶ 69. Aloha did not receive a response to the June 22, 2011 letter.  First Amended Complaint ¶ 70.

On April 1, 2013, National Union demanded arbitration against Aloha for amounts owed as premiums, adjustments, expenses, fees, or reimbursements of any kind, including without limitation, any indemnification for losses or loss expenses, and any damages, interest of security that may be due, pursuant to the insurance "Program."  First Amended Complaint ¶¶ 71-72.  The demand sought reimbursement of ALAE for the defense of Aloha in the *BlueEarth* action in the amount of (1) $1,343,669 due as premium arising from loss expenses, and (2) $287,901 due as security, for a total due of $1,631,570.  First Amended Complaint ¶¶ 72, 75.  The demand disputed whether the *BlueEarth* action is covered by the GL

Policy, and sought to establish that the LRRP Endorsement, ALAE Option C is not limited by the Deductible Endorsement.   First Amended Complaint ¶¶ 75-79.

In response, Aloha filed its initial complaint in the instant declaratory judgment action on June 13, 2013.   National Union served an Amended Demand for Arbitration, dated February 14, 2014, and concurrently filed a Petition to Compel Arbitration in the United States District Court, Southern District of New York. First Amended Complaint ¶ 90.   Aloha thereafter filed its First Amended Complaint, setting forth the following causes of action: (1) declaratory judgment regarding the parties' substantive rights and obligations under the GL policy (Count I); (2) declaratory judgment regarding arbitrability (Count II); (3) declaratory judgment that National Union's arbitration demand is unenforceable (Count III); (4) injunctive relief (Count IV); (5) breach of the duty of good faith and fair dealing with respect to the retroactive annulment of the Deductible Endorsement (Count V); (6) bad faith claim for refusal to agree to Aloha's appointed arbitrator (Count VI); and (7) bad faith claim based on National Union's demand for arbitration (Count VII).   The Court has already granted summary judgment to Aloha on Count II. National Union seeks dismissal of Aloha's bad faith claims, Counts V through VII.

## STANDARD OF REVIEW

Rule 12(b)(6) permits a motion to dismiss for failure to state a claim upon which relief can be granted.   Pursuant to *Ashcroft v. Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"   555 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007)).   "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."   *Id.*   Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."   *Id.* (citing *Twombly*, 550 U.S. at 555).   Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Id.* (citing *Twombly*, 550 U.S. at 556).   Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not constitute a short and plain statement of the claim showing that the pleader is entitled to relief as required by Rule 8(a)(2).   *Id.* at 679.

**DISCUSSION**

I.     **Count V**

        Count V alleges that National Union breached its duty of good faith and fair dealing by retroactively and unilaterally annulling the Deductible Endorsement. According to Aloha, the GL Policy for the policy periods April 1, 2008 to April 1, 2009 and April 1, 2009 to April 1, 2010 included the Deductible Endorsement, which set the annual aggregate deductible of $100,000 to the liability coverage, including any ALAE. First Amended Complaint ¶¶ 130-31. Beginning with the policy period April 1, 2010, Aloha changed carriers for its commercial general liability coverage from National Union to Liberty Mutual Insurance Corporation. First Amended Complaint ¶ 132.

        Without prior notice to Aloha, on February 24, 2011, National Union issued the Corrected Deductible Endorsement, which deleted the $100,000 annual deductible aggregate. According to Aloha, the intended effect of the Corrected Deductible Endorsement was to "unfairly benefit National Union financially by retroactively shifting to Aloha all costs of defense" and "was done in bad faith by National Union." First Amended Complaint ¶¶ 134, 136. It asserts that National Union's attempt to retroactively annul the Deductible Endorsement is an unfair and

deceptive act or practice in the business of insurance, in violation of Haw. Rev. Stat. § 431:13-103 and § 431:10-227.   First Amended Complaint ¶¶ 135, 137-38.

National Union seeks dismissal of the claim on the grounds that (1) correcting the Deductible Endorsement did not violate HRS § 431:13-103 or § 431:10-227; and (2) the alleged statutory violations do not support a bad faith claim as a matter of Hawaiʻi law because such claims are limited to "claims and settlement practices."   Mem. in Supp. at 9.   The Court first discusses the development of the tort of bad faith in Hawaiʻi before turning to the allegations in the First Amended Complaint.

### A.   Contours of the Tort of Bad Faith in Hawaiʻi

Hawaiʻi courts first recognized a "bad faith cause of action in the first-party insurance context" in *Best Place, Inc. v. Penn America Insurance Co.*, 82 Haw. 120, 127, 920 P.2d 334, 341 (1996).   In *Best Place*, the insured sued its fire insurer for (1) breach of contract and (2) tortious breach of the implied covenant of good faith and fair dealing after the insurer denied a claim for fire loss.   *Id.* at 122, 920 P.2d at 336.   The Supreme Court of Hawaii discussed case law, statutory provisions, and legislative history to find that "there is a legal duty, implied in a first- and third-party insurance contract, that the insurer must act in good faith in dealing with its insured, and a breach of that duty of good faith gives rise to an independent

10

tort cause of action." *Id*. at 132, 920 P.2d at 347. As explained in *Best Place*, to prove bad faith:

> [T]he insured need not show a conscious awareness of wrongdoing or unjustifiable conduct, nor an evil motive or intent to harm the insured. An unreasonable delay in payment of benefits will warrant recovery for compensatory damages. . . . However, conduct based on an interpretation of the insurance contract that is reasonable does not constitute bad faith. In addition, an erroneous decision not a pay a claim for benefits due under a policy does not by itself justify an award of compensatory damages. Rather, the decision not to pay a claim must be in "bad faith."

*Id.* at 133, 920 P.2d at 348 (citations omitted).

Following *Best Place*, in *Enoka v. AIG Hawaii Insurance Co., Inc*., 109 Hawaiʻi 537, 552, 128 P.3d 850, 865 (2006), the court addressed whether there can be a breach of the covenant of good faith without coverage under the insurance policy. *Enoka* held that an insured is not precluded from bringing a bad faith claim even where there is no coverage liability on the underlying policy. *Id.* at 552, 128 P.3d at 865. The court noted that, "as explained by the Hawaiʻi Supreme Court in *Best Place*, a claim for the tort of bad faith does not turn on whether the claim for benefits was due or not, instead it turns on the conduct of the insurance company in handling the claim." *Id.* at 551, 128 P.3d at 864.

11

More recently, the Supreme Court of Hawaii discussed *Best Place* while extending the tort of bad faith to assigned claims, even in the absence of a contract between the parties. In *Willis v. Swain*, 129 Hawai'i 478, 486, 304 P.3d 619, 627 (2013), the court discussed the underpinnings of the tort as first recognized in *Best Place.*

> This court held that there was a legal duty, implied in first and third-party insurance contracts, requiring the insurer to act in good faith in dealing with insureds, and a breach of that duty of good faith gave rise to an independent cause of action in tort. *Id.* at 131-32, 920 P.2d at 345-46. Although repeatedly alluding to the existence of a contractual relationship between the insurer and insured, this court grounded bad faith tort claims on the special relationship between insurers and their insureds. *See id.* It was reasoned that the tort of bad faith is not merely a tortious breach of contract, "but rather a separate and distinct wrong 'which results from the breach of a duty imposed as a consequence of the relationship established by contract.'" *Id.* at 131, 920 P.2d at 345 (citation omitted). Hence, there were sound reasons "for recognizing a cause of action in tort for breach of the implied covenant of good faith and fair dealing in the insurance context." *Id.* at 132, 920 P.2d at 346. Specifically, the special relationship between insurer and insured was "atypical, and the adhesionary aspects of an insurance contract . . . justif[ied] the availability of tort recovery." *Id.* Finally, a bad faith cause of action would provide the necessary compensation to the insured for all damages suffered as a result of insurer misconduct. *Id.* Without the threat of a tort action, insurance companies had "very little incentive to promptly pay proceeds rightfully due to their insureds, as they stand to lose very little by denying payment." *Id.*

*Id.* at 486, 304 P.3d at 627. *See also Miller v. Hartford Life Ins. Co.,* 126 Hawai'i 165, 178, 268 P.3d 418, 431 (2011) ("[T]he plaintiff must first prove liability for bad faith, *i.e.*, that the defendant insurer breached its implied covenant of good faith and fair dealing in its dealings with its insured.").

Notably, none of these decisions address whether the scope of the tort is limited in the manner urged by National Union. With this framework in mind, the Court turns to the allegations in the First Amended Complaint to determine whether Count V states a claim for bad faith based on the issuance of the Corrected Deductible Endorsement.

**B. Aloha States a Claim for Bad Faith Based on the Corrected Deductible Endorsement**

National Union contends that "correcting" the Deductible Endorsement in 2011 – two to three years after the policy period at issue ended – fails to state a claim for bad faith as a matter of law because "the tort remedy of bad faith is properly only available for denial of policy benefits through claims and settlement practices." Mem. in Opp. at 9. According to National Union, Aloha does not allege "that it was denied any policy benefits through the way the *BlueEarth* Action was handled or settled. . . . The only dispute here is a payment dispute." *Id.* The Court finds these contentions to be without merit.

First, National Union identifies no binding authority limiting the tort of bad faith to an insurer's claims and settlement practices. Hawaii courts have not spoken on this issue, and National Union's citation to California law, *Jonathan Neil & Assoc., Inc. v. Jones*, 33 Cal.4th 917 (Cal. 2004), is unpersuasive under the specific facts and circumstances of this case. Significantly, there is no language in *Best Place* or its progeny that would indicate that Hawaiʻi courts intended to limit the tort of bad faith solely to the denial of policy benefits through claims and settlement practices, as urged by National Union. On the contrary, this district court has previously recognized "the decidedly pro-insured principles set forth in Hawaiʻi case law." *U.S. Fire Ins. Co. v. Estate of Campbell*, 2011 WL 6934566, at *11 (D. Haw. Dec. 30, 2011); *see also CIM Ins. Corp. v. Masamitsu*, 74 F. Supp. 2d 975, 988 (D. Haw. 1999) ("[A]n insurer may be liable [for bad faith] for the improper conduct of the defense of its insured even though it is ultimately determined that the insurer had no duty to defend or indemnify under the terms of the policy. This is especially so where an insurer defends subject to a reservation of rights in situations with both covered and uncovered claims. *Finley* [*v. Home Insurance Co*., 90 Hawaiʻi 25, 36-37, 975 P.2d 1145, 1156-57 (1998)] adopted an 'enhanced' standard of good faith when an insurer defends subject to a reservation of rights. An insurer's conduct is subject to higher scrutiny.") (citations omitted).

14

Although the tort of bad faith is not thoroughly defined under Hawaiʻi case law, and remains to be developed, it is clear that it has not been limited in the manner urged by National Union.   In keeping with Hawaii's construction of the tort of bad faith, the Court concludes that the tort has not been restrictively limited to "claims and settlement practices," and that Aloha should be permitted to pursue its Count V claim based on the allegations that Aloha unilaterally issued the Corrected Deductible Endorsement.

To the extent National Union seeks dismissal based on Count V's reliance on provisions of the Hawaii Insurance Code, those arguments are similarly rejected.   There is no dispute that HRS § 431:13-103 does not provide for a private right of action.[1]   This Court, however, agrees with the district court's conclusion in *Wailua Assocs. v. Aetna Cas. & Sur. Co*., 27 F. Supp. 2d 1211, 1220-21 (D. Haw. 1998), that evidence of statutory violations may be used to support a common law

_____

[1]HRS § 431:13-103 provides in part:

> (a) The following are defined as unfair methods of competition and unfair or deceptive acts or practices in the business of insurance:
>
> > (1) Misrepresentations and false advertising of insurance policies. Making, issuing, circulating, or causing to be made, issued, or circulated, any estimate, illustration, circular, statement, sales presentation, omission, or comparison which:
> >
> > > (A) Misrepresents the benefits, advantages, conditions, or terms of any insurance policy[.]

15

cause of action for bad faith. In *Wailua Assocs.*, the district court explained that the

--

> bad faith remedy at issue is of a common law nature. In fact,
> Hawaii does not have a statutory definition of bad faith which
> could have been incorporated into H.R.S. § 431:13-103. The
> Hawaii Supreme Court, in adopting a common law remedy for
> bad faith, expressed its concern that the administrative remedies
> provided in H.R.S. § 431:13–103(a) were inadequate to "provide
> sufficient incentive to insurers to perform their obligations in
> good faith." *Best Place*, 82 Hawai'i at 127, 920 P.2d 334.
> Although H.R.S. § 431:13-103 does not provide for a private
> cause of action, the insurance industry should not be encouraged
> to commit the types of unfair practices contained therein.
> Therefore, the Court finds that violations of the unfair settlement
> provision, § 431:13-103(a), may be used as evidence to indicate
> bad faith in accordance with the guidelines of *Best Place*.

*Id.* *Wailua Assocs.* reviewed Hawaii case law, noting that --

> the Intermediate Court of Appeals ("ICA") of the State of
> Hawaii in *Christiansen v. First Ins. Co. of Hawaii*, 88 Hawai'i
> 442, 967 P.2d 639 (1998), tacitly approves the submission of
> violations of the unfair settlement practices statute as evidence of
> bad faith. The ICA stated that allegations referring to prompt
> investigation, negligent investigation, failure to promptly pay a
> determined claim, failure to effectuate prompt settlement,
> compelling the initiation of litigation, etc. "on their face, meet
> the *Best Place* test for bringing an action in bad faith. . . ."

*Id.* at 1221 n.6 (citation omitted). Subsequently, "in 2006, the ICA cited to *Wailua*

in a footnote noting that this Court 'has indicated that violations of HRS

§ 431:13-103 may nevertheless be used as evidence of insurer bad faith.' *Wittig v.*

*Allianz, A.G.,* 112 Hawai'i 195, 145 P.3d 738, 749 n.5 (Haw. App. 2006)." *Mauna*

*Kea Beach Hotel Corp. v. Affiliated FM Ins. Co*., 2009 WL 1227850, at *4 (D. Haw.

May 1, 2009). Accordingly, Aloha's allegations that issuance of the Corrected

Endorsement was an unfair or deceptive act proscribed by HRS § 431:13-103, the

purpose of which was to unfairly benefit National Union by retroactively shifting the

costs of defense for the *BlueEarth* action, are permitted to proceed as non-exclusive

evidence of National Union's bad faith.

Nor will the Court dismiss the allegations to the extent they rely on

HRS § 431:10-227's prohibition on retroactively annulling coverage. The

Deductible Endorsement could implicate "coverage" as the statute does not on its

face limit "coverage" to indemnity. Aloha asserts that by retroactively removing

the $100,000 annual aggregate deductible, National Union attempted to shift the

responsibility for defense costs, which affected Aloha's coverage and policy

benefits. These assertions are not precluded as a matter of law.

The Court reiterates that, at the present stage of the litigation, it relies

upon Hawai'i courts' embrace of "the common law duty of good faith and fair

dealing of insurers [that] is incorporated in the insurance code." *Willis v. Swain*,

129 Hawai'i 478, 493 n.29, 304 P.3d 619, 634 n.29 (2013).

> Although not applying a statute, *Best Place*, *Enoka*, and
> *Christiansen* rest on the principle of a good faith obligation in the
> insurer-insured relationship, as set forth in this opinion. This
> decision recognizes the statutory relationship of good faith, HRS
> § 431:1-102, between an insurer and insured underlying HRS §
> 431:10C-403.

*Id.*

Accordingly, National Union's motion is DENIED as to Count V.

## II.    <u>Count VI</u>

Count VI alleges bad faith based on National Union's refusal to agree
to Aloha's proposed arbitrator.   At the hearing on the motion, Aloha conceded that
this claim is mooted by the Court's previous ruling that the present dispute is not
arbitrable.   Accordingly, Count VI is dismissed without prejudice.

## III.    <u>Count VII</u>

In Count VII, Aloha alleges that National Union breached the duty of
good faith and fair dealing when it demanded arbitration of the disputes over the
terms of the GL Policy.   According to Aloha, National Union attempted to "obtain a
'home field' advantage and make it more difficult and expensive for Aloha to litigate
by filing a Petition to Compel Arbitration in the United States District Court for the
Southern District of New York on February 19, 2014, notwithstanding the pendency

of this first-filed action[.]"   First Amended Complaint ¶ 154.   Aloha also alleges

that --

> In attempting to force Aloha to relinquish its valuable right to
> resolve disputes relating to the National Union GL Policy in a
> court of law that follows the strict rule of law, and instead submit
> to arbitration in an insurer-favorable forum that is not mandated
> to follow the law, National Union acted wantonly and
> oppressively and with such malice as implies a spirit of mischief
> or indifference to its contractual and civil obligations, thereby
> entitling Aloha to punitive damages.

First Amended Complaint ¶ 156.

Although this Court determined that the Payment Agreement's

arbitration provisions do not apply to the instant dispute, Aloha's allegations of bad

faith based on the arbitration demands fail to state a claim.   National Union's

interpretation of the interplay between the GL Policy, relevant endorsements and

Payment Agreement, albeit unsuccessful, was not so unreasonable as to support a

bad faith claim.   *See Enoka*, 109 Hawai'i at 552, 128 P.3d at 865 ("[W]here an

insurer denies the payment of no-fault benefits based on an 'open question of law,'

there is 'obviously no bad faith on the part of [the insurer] in litigating that issue.'");

*Best Place,* 82 Hawai'i 133,920 P.2d at 348 ("An unreasonable delay in payment of

benefits will warrant recovery for compensatory damages. . . .   However, conduct

based on an interpretation of the insurance contract that is reasonable does not

constitute bad faith").  Courts have found that a refusal to arbitrate a dispute that is clearly not arbitrable does not constitute bad faith.  If the converse is similarly true, a demand to arbitrate a dispute that is arguably arbitrable also does not constitute bad faith.  *See Government Employees Ins. Co. v. Dizol*, 176 F. Supp. 2d 1005, 1035 (D. Haw. 2001) ("There can be no bad faith in a refusal to go to arbitration when the bedrock issue of coverage is in dispute and that dispute is clearly not arbitrable.").

Here, National Union's exercise of contractual rights under the Payment Agreement, although erroneous, was not unreasonable.  Aloha does not dispute that the Payment Agreement contains an arbitration provision that applies to the terms of the Payment Agreement itself.  The parties did, however, vigorously dispute whether the present disagreement is governed by the terms of the Payment Agreement.  As discussed in the Court's June 6, 2014 Order --

> the Payment Agreement's arbitration provision applies only to (1) "[a]ny disputed items [i.e., "any amount of Your Payment Obligation"] not resolved within 60 days after [National Union's] response to [Aloha's] written particulars," and (2) "[a]ny other unresolved dispute arising out of [the Payment] Agreement."  Ex. 5 at A0008.  *See also* National Union Opp. at 6 ("The Payment Agreement governs the manner in which Aloha remits Payment of premiums, expenses, and fees to National Union, as well as the nature and amount of collateral Aloha must deliver to cover its obligations under the Policy.").  Neither of these two clauses govern the claims for coverage and policy construction set forth in Aloha's Count I.

20

6/6/ Order at 17-18 (footnoted omitted).   The issue had not previously been litigated in this jurisdiction and both sides supported their arguments regarding arbitrability with citations to supporting legal authorities.   In the end, the Court sided with Aloha.   Although the Court did not agree with National Union's interpretation of the agreements, the Court finds that National Union's position was neither unreasonable, frivolous, nor without support, and therefore may not be used as the basis of a bad faith claim.   *See, e.g, Government Employees Ins. Co.*, 176 F. Supp. 2d at 1035-36 (finding no bad faith where insurance company facing unsettled question of law refused to indemnify and instead filed declaratory action); *Colonial Penn Ins. Co. v. First Ins. Co. of Hawaii*, 71 Haw. 42, 44, 780 P.2d 1112, 1114 (1989) (Find that "the question of who was liable to pay . . . was an open question of law, and there was obviously no bad faith on the part of First Insurance in litigating that issue.").

The allegations in Count VII, even if true, fail to state a claim for the tort of bad faith.   Accordingly, National Union's motion is GRANTED with respect to Count VII.

## CONCLUSION

On the basis of the foregoing, the Court GRANTS in part and DENIES in part Defendant National Union Fire Insurance Company of Pittsburgh, PA's

Motion to Dismiss Counts V Through VII. The motion is GRANTED with respect to Counts VI and VII, which are hereby dismissed. The motion is DENIED as to Count V.

IT IS SO ORDERED.

DATED: July 8, 2014 at Honolulu, Hawaiʻi.



Derrick K. Watson
United States District Judge

---

Aloha Petroleum, Ltd. v. National Union Insurance Company of Pittsburgh, PA; Civil No. 13-00296 DKW-RLP; ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA'S MOTION TO DISMISS COUNTS V-VII OF THE FIRST AMENDED COMPLAINT